Filed 9/1/22  Bernal v. Kaiser Foundation Hospitals CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ROSEMARIE BERNAL, | B309059 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 18STCV03901) |
| v. | |
| KAISER FOUNDATION HOSPITALS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rafael A. Ongkeko, Judge.  Affirmed.

Gusdorff Law, Janet Gusdorff; Law Office of David R. Denis and David Robert Denis for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza and Scott M. Klausner for Defendant and Respondent.

———————————————

The trial court granted summary judgment in favor of defendant and respondent Kaiser Foundation Hospitals (Kaiser) and against plaintiff and appellant Rosemarie Bernal on her cause of action for wrongful termination in violation of public policy and her claims under the Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et seq.)[1] and the California Family Rights Act (CFRA). Bernal's claims arise out of her employment as a peripherally inserted central catheter (PICC) nurse at Kaiser. Among other things, Bernal avers that her supervisors at Kaiser set her up for failure by forcing her to undergo evaluations of her competency (validations) conducted by unqualified personnel, and later terminating her for failing to pass those validations. Regarding her FEHA claims, Bernal alleges Kaiser discriminated against her because of a disability; retaliated against her for engaging in conduct protected by FEHA; failed to provide reasonable accommodation and participate in the interactive process vis-à-vis her disability; and failed to prevent violations of FEHA.

Bernal fails to demonstrate the trial court erred in granting summary judgment. First, we conclude Bernal exhausted only the FEHA claims arising out of her competency validations and subsequent termination. Further, we reject Bernal's FEHA discrimination and retaliation causes of action because Kaiser advanced a legitimate, nondiscriminatory/nonretaliatory reason for terminating Bernal, and she has not shown a triable issue regarding whether her supervisors discriminated against her based on an actual or perceived disability or retaliated against

---

[1] Undesignated statutory citations are to the Government Code.

her for engaging in conduct she reasonably believed FEHA protects. Bernal's reasonable accommodation and interactive process claims fail because she does not establish a triable issue concerning whether Kaiser failed to provide her with a reasonable accommodation for an actual or perceived disability. Lastly, Bernal has abandoned her CFRA claims, and her failure to prevent FEHA cause of action and wrongful termination claim fail because they are predicated on the viability of her other claims, for which there is no triable issue of material fact. We thus affirm without addressing Kaiser's other arguments in support of the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our disposition of this appeal.

### 1. *Bernal's tenure at Kaiser's LAMC from 2010 to 2015*

In August 2010, Kaiser hired Bernal as a PICC nurse at Kaiser's Los Angeles Medical Center (LAMC).

---

[2] Our factual and procedural background is derived in part from undisputed aspects of the trial court's summary judgment order and the parties' filings. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; Standard of Review, *post* [noting that the trial court's orders are presumed correct]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

3

In 2014, Bernal had surgery for carpal tunnel syndrome. She went on leave for one and a half months following that surgery. Bernal underwent another surgery for this condition in June 2015. During the month immediately preceding this second surgery, Bernal was placed on modified duty, and after the surgery, Bernal took a medical leave of absence until August 23, 2015.

Bernal alleges that in 2014 and 2015, LAMC Department Administrator Emily-Joy Flynn and LAMC Assistant Department Administrator Rodrigo Taad discriminated against her on account of her carpal tunnel syndrome and retaliated against her for taking leaves of absence and being on modified duty. These allegations of wrongful conduct include "Flynn passing . . . Bernal over for a promotion after . . . Bernal took a medical leave of absence for her carpal tunnel and instead[ ] giving the job to a less-qualified nurse who did not have any physical condition; . . . Taad disregarding . . . Bernal's need for and entitlement to accommodation for her carpal tunnel including [her] modified work schedule, and then bad-mouthing . . . Bernal to her co-workers and subordinates; . . . [and] Taad attributing . . . Bernal with negative attendance on her performance evaluation . . . ."

2. ***Bernal's transfer to West L.A., the incident at West L.A., and Bernal's attempts to transfer back to LAMC***

In January 2016, Bernal transferred to Kaiser's West Los Angeles facility (West L.A.).[3] "Bernal had an incident in the

_____

[3] Bernal claims she decided to transfer to West L.A. to escape from Flynn's and Taad's "harassment/discriminatory treatment." (Boldface omitted.)

initial case to which she was assigned" at West L.A. Bernal claims that "[t]he catheter retreated partially into the patient's arm and neither [she nor the supervising nurse were] able to retrieve the catheter." On the other hand, Kaiser asserts that "Bernal lost the PICC line in the patient's arm" and "made an unauthorized incision into [the] patient" "in an effort to retrieve the catheter." (Some capitalization omitted.) Kaiser claims "[t]he patient eventually had to be taken to surgery." Although Bernal insists "she had followed the proper protocol" and "was not disciplined due to the incident," there is no dispute that Kaiser deemed Bernal to have failed her probationary period at West L.A.

Bernal thereafter attempted to secure a transfer back to LAMC. According to Bernal, Flynn falsely told her in February 2016 that Bernal's position had been filled in an attempt to prevent her from returning to LAMC. Bernal claims that "[t]hrough the advocacy of private counsel, Kaiser LAMC rehired . . . Bernal and indicated a return start date of May 22, 2016." Bernal took a medical leave of absence from May 9, 2016 to June 26, 2016, which Bernal claims she requested "[d]ue to the severe stress, depression and anxiety caused by not knowing when or if she would be returned to work."

3. ***Events occurring after Bernal returned to LAMC in June 2016***

On June 27, 2016, Bernal returned to work at LAMC. "In the time Bernal was away from LAMC, oversight of the PICC department was transferred from Bernal's former man[a]gers (Taad and Flynn) to a new set of administrators—Julius Garcia and Shelley Stanovich."

5

On the date of Bernal's return to LAMC, Stanovich and Garcia met with her. Bernal asserts that at this meeting, Stanovich and Garcia denied Bernal's request for union representation, changed Bernal's work schedule, placed her on a 10-day probation, and told her that she was subject to a competency validation in which another Kaiser employee would observe her perform PICC line insertions for 10 adults and three children. Bernal also claims that upon her return to LAMC, Stanovich and Garcia reduced her rate of pay to less than what she had been paid prior to her transfer.[4]

Garcia asserts that during the June 27, 2016 meeting, Bernal "was having difficulty speaking[, h]er speech was slow, and she appeared sluggish." Similarly, Stanovich claims "[d]uring that meeting, . . . Bernal appeared foggy[, s]he seemed sluggish, and her speech was slow and sometimes lacked coherence."

Between June 28, 2016 and July 26, 2016, Bernal completed the competency validation by performing PICC line insertions for 10 adults and three children; a fellow nurse served as a "preceptor" by observing Bernal perform these procedures. Bernal claims that "Stanovich arbitrarily rejected" this

---

[4] Bernal concedes that the pay discrepancy "was corrected after she complained to LAMC's Department of Human Resources." Additionally, the portions of the record she cites in connection with the pay issue show only that her rate of pay had been reduced when she returned to LAMC, and not that Stanovich or Garcia were responsible for decreasing her rate of pay. Bernal also seems to have admitted in her deposition testimony that LAMC's human resources department told her after the June 27, 2016 meeting that she was not subject to a 10-day probation.

"validation of . . . Bernal, deciding to change the validation structure" and require Bernal to submit to a second competency validation whereas Kaiser claims that Stanovich decided to subject Bernal to another competency validation because "[t]he information on the submitted form [for the validation] was too sparse for Stanovich to evaluate *how* Bernal performed in each insertion . . . ." Additionally, on August 2, 2016, Bernal sent an e-mail to the human resources department, with Garcia copied as a recipient, wherein she complained that Garcia was "consistently" harassing and intimidating her by expressing "reservations regarding [her] competency . . . ."

Bernal took medical leave from August 3, 2016 to September 21, 2016. Bernal alleges that "Kaiser was made aware of the fact that, as of her return to LAMC [in] 2016, . . . Bernal's leaves were instigated by work-induced stress, precipitated by [Stanovich's and Garcia's] acts of discrimination and harassment."

Upon Bernal's return to LAMC on September 21, 2016, she underwent the second competency validation. Bernal asserts this validation was "tainted" in several respects—e.g., the nurse who conducted the validation "was new to Kaiser[ ] and had no PICC certification or knowledge"; and this nurse "completed the validation tool without any help from" a specialized nurse who had observed the process. Bernal contends that the two nurses should not have participated in the validation because one of them was "less senior to her" and the other was "a non-PICC certified nurse." According to Bernal, she should have been "validated by BARD, an outside independent agency."

Kaiser asserts that Bernal failed the second competency validation by "violat[ing] several important patient-safety

7

practices during the four procedures she was permitted to perform." Bernal counters that the nurse who completed the validation tool had only a "cursory" "understanding of the Kaiser PICC protocol"; "Bernal performed some of the steps articulated within the tool in an order that was different than that which was reflected on the tool itself"; and the nurse who completed the validation tool "misinterpreted several steps taken by . . . Bernal." Bernal further alleges that Stanovich falsely claimed that the other nurse who observed the second validation " 'verbalized concerns regarding techniques that . . . Bernal had failed to follow that put the patient at risk[.]' "

On September 23, 2016, Bernal sent an e-mail to Garcia, with Stanovich and the human resources department copied as recipients, in which she complained of the procedures utilized during the second competency validation. In the e-mail, Bernal stated: "This kind of harassment is another desperate move to continue your obvious retaliation to undermine my performance."

Garcia placed Bernal on investigatory suspension following the second competency validation. On November 17, 2016, Bernal was subjected to another competency validation. Kaiser claims that Bernal did not pass this validation either. Bernal complains that the same non-PICC certified nurse who completed the prior validation—and not BARD—conducted this validation. Later on November 17, 2016, Garcia again placed Bernal on investigatory suspension.

On November 19, 2016, Bernal took a medical leave of absence, which she extended such that it was scheduled to end on April 17, 2017.[5]

---

[5] Bernal claims she took this medical leave of absence because she was "diagnosed with major depression . . . ." She

On February 10, 2017, Stanovich sent a letter to Bernal, stating, "It has been brought to management's attention that you have obtained or continue employment elsewhere, performing similar work, while on leave from Kaiser . . . ." Stanovich further stated, "[Kaiser] deems your actions a potential failure to adhere to established policies and specifically the expectation that you will be honest and accurate in the information provided or documented. Submitting work status reports placing you off work while engaging in other work/activities that are inconsistent with your reported medical restrictions is a serious offense and may constitute fraud." Stanovich closed the letter by requesting that Bernal contact her by February 17, 2017 to "discuss this matter," and by stating that "[f]ailure to make contact with management by [that] date w[ould] be considered job abandonment and subject [Bernal] to termination effective February 17, 2017."

It is undisputed that Bernal did not respond to Stanovich's letter.[6] On February 17, 2017, Stanovich terminated Bernal.

### 4. *The DFEH complaint and the trial court proceedings*

On November 8, 2017, Bernal filed an administrative complaint with the Department of Fair Employment and Housing

---

does not assert that Stanovich or Garcia was aware that she had this condition. Rather, as we explain in Discussion, part B.3, *post*, she claims Stanovich regarded or treated Bernal as having a *physical* disability during that timeframe.

[6] Bernal claims that, "[o]n the advice of her prior workers' compensation attorney, . . . Bernal did not respond to . . . Stanovich's letter because she was still on her medical leave."

(DFEH) against Kaiser.  That same day, DFEH issued her a right to sue letter and informed her that the agency would "take no further action on the complaint."

On November 5, 2018, Bernal commenced suit against Kaiser by filing a complaint, alleging the following eight causes of action:  (1) discrimination on the basis of disability under FEHA; (2) retaliation under FEHA; (3) failure to participate in the interactive process under FEHA; (4) failure to provide reasonable accommodation under FEHA; (5) failure to prevent discrimination, harassment, or retaliation under FEHA; (6) violation of the CFRA; (7) retaliation for taking CFRA leave; and (8) wrongful termination in violation of public policy.

On November 22, 2019, Kaiser moved for summary judgment or, in the alternative, summary adjudication on each of Bernal's causes of action.  Kaiser argued, among other contentions, that res judicata barred all of Bernal's claims; her FEHA causes of action failed because she did not have a qualifying disability; she could not recover on her FEHA disability discrimination and retaliation causes of action because Kaiser's reason for terminating Bernal was legitimate; Kaiser was entitled to judgment on Bernal's FEHA failure to participate in the interactive process and failure to provide reasonable accommodation claims because she was not denied reasonable accommodation; Bernal's FEHA failure to prevent cause of action failed because it was derivative of her discrimination and retaliation claims, both of which failed; Bernal's CFRA claims failed because she was not entitled to leave under that statute and the reason for her termination was legitimate; and she was not entitled to relief on her wrongful termination claim.  Kaiser further contended that "the only claims at issue [in] this

10

litigation are those relating to Bernal's . . . termination" because the remainder of her claims was untimely or barred for failure to exhaust administrative remedies.

Bernal opposed Kaiser's motion, and Kaiser filed a reply to Bernal's opposition.

On July 14, 2020, the trial court granted Kaiser's summary judgment motion. The court ruled that res judicata did not bar Bernal's claims; Bernal's causes of action were time-barred except those arising on or after May 9, 2016; Bernal's FEHA causes of action failed because she did not demonstrate a triable issue of material fact regarding whether she had a qualifying disability; Bernal's CFRA claims failed because she was not entitled to leave under that statute and Kaiser had a legitimate, nonretaliatory reason for terminating her; and "[b]ased on the absence of any constitutional, statutory, or other public policy violations, there [was] no basis for [Bernal's] wrongful termination claim." The trial court entered judgment for Kaiser on September 14, 2020. On November 13, 2020, Bernal appealed the judgment.

## STANDARD OF REVIEW

" 'We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court.' [Citation.] 'Summary judgment is appropriate only "where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." ' [Citation.]" (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76.) "Under summary judgment law, ' "[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the

applicable standard of proof." [Citation.] . . . .' [Citation.]" (*Lares v. Los Angeles County Metropolitan Transportation Authority* (2020) 56 Cal.App.5th 318, 331–332.)

" ' "[D]e novo review [of an order granting summary judgment] does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." ' [Citation.]" (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492 (*Los Angeles Unified School Dist.*); see also *Estate of Sapp* (2019) 36 Cal.App.5th 86, 104 [" 'It is well settled that all presumptions and intendments are in favor of supporting the judgment or order appealed from, and that the appellant has the burden of showing reversible error, and in the absence of such showing, the judgment or order appealed from will be affirmed.' "].)

"We affirm the trial court's decision [granting a summary judgment motion] if it is correct on any ground the parties had an adequate opportunity to address in the trial court, regardless of the reasons the trial court gave." (See *Jameson v. Pacific Gas & Electric Co.* (2017) 16 Cal.App.5th 901, 908–909; see also *Estate of Sapp, supra*, 36 Cal.App.5th at p. 104 [" 'If the *decision* of a lower court is correct on any theory of law applicable to the case, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the lower court reached its conclusion.' "].)

## DISCUSSION

Much of the parties' briefing focuses on whether Kaiser was entitled to judgment as a matter of law on Bernal's FEHA discrimination and retaliation causes of action. Also, as we explain in Discussion, parts C and E, *post*, several of Bernal's other causes of action fail in part because her discrimination and retaliation causes of action are not viable. Given the importance of Bernal's discrimination and retaliation claims to resolving this appeal, we begin our discussion with a summary of the law governing those claims.

"FEHA declares it an 'unlawful employment practice' for any employer 'because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, . . . to discharge the person from employment . . . , or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.' (Gov. Code, § 12940, subd. (a).) The statute also prohibits employers from retaliating against employees for engaging in protected activity—i.e., for 'discharg[ing], expel[ling], or otherwise discriminat[ing] against any person because the person has opposed any practices forbidden under this part . . . .' (*Id.*, § 12940, subd. (h).)" (*Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1219 (*Joaquin*).) Similarly, FEHA bars employers from "retaliat[ing] or otherwise discriminat[ing] against a person for requesting accommodation [for the known physical or mental disability of an employee], regardless of whether the request was granted." (See § 12940, subds. (m)(1)–(m)(2).)

13

"California resolves employment discrimination claims by applying a burden-shifting procedure.  Under this test, the plaintiff bears the initial burden of proving a prima facie case of discrimination by presenting evidence showing:  (1) he is a member of a protected class, (2) he was qualified for the position sought or was performing competently in the position held, (3) he suffered an adverse employment action, and (4) some other circumstance suggests a discriminatory motive." (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1007 (*Foroudi*).)

"Once the employee sets forth a prima facie case [of discrimination], the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  [Citation.]  If the employer does so, the burden then shifts back to the employee to 'offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' [Citation.]" (*Foroudi, supra*, 57 Cal.App.5th at p. 1007.)

" '[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action,[7] and (3) a causal link existed

---

[7] "[T]he [adverse] employment actions that can give rise to a claim for retaliation are *identical* to the actions that can give rise to a claim for discrimination" (see *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1168), i.e., " 'actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement.' [Citation.]" (See *Doe v. Department of Corrections &*

14

between the protected activity and the employer's action. . . . Once an employee establishes a prima facie case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. . . . If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation " ' "drops out of the picture," ' " and the burden shifts back to the employee to prove intentional retaliation.' [Citation.]" (*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1408 (*Jumaane*).)

With these principles in mind, we turn to the substance of Bernal's challenge to the trial court's decision.

## A. Bernal Exhausted Only Those FEHA Claims Arising Out of Her Competency Validations and the Ensuing Termination

Kaiser argued in its summary judgment motion that Bernal failed to exhaust all her FEHA claims except those relating to her termination. Kaiser reasserts that contention in the respondent's brief. With one exception, we agree with Kaiser.

"Before filing a civil action alleging FEHA violations, an employee must exhaust his or her administrative remedies with DFEH. Specifically, the employee must file an administrative complaint with DFEH identifying the conduct alleged to violate FEHA. At the conclusion of the administrative process, which may or may not include an investigation or administrative remedies, DFEH generally issues the employee a right-to-sue notice." (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 153 (*Wills*).) Upon an employee's commencement of a civil action

_____

*Rehabilitation* (2019) 43 Cal.App.5th 721, 734 (*Department of Corrections & Rehabilitation*).)

15

thereafter, the "permissible scope" of that action is limited "to the information brought to DFEH's attention . . . or to information DFEH reasonably should have discovered during its investigation." (See *id.* at p. 156; see also *id.* at pp. 157, 159 [concluding that an employee did not exhaust certain FEHA causes of action because she "failed to present any evidence showing these claims surfaced in the administrative process or explain how these claims should have been discovered during a reasonable investigation"].)

Kaiser's description of Bernal's administrative complaint is accurate, that is, "threadbare and boilerplate." The only date identified in that complaint is "February 17, 2017," which is the date of Bernal's termination. The complaint lists purported adverse employment actions and other alleged misconduct in a conclusory fashion, e.g., Kaiser "terminated [Bernal] because of her disability and because she complained of disability discrimination, harassment and retaliation," "denied her the right to participate in a good faith interactive work process," and "denied [her] a reasonable accommodation . . . ." The complaint, however, provides no details to support these conclusory assertions.

We conclude that, by asserting in the DFEH complaint that Kaiser's decision to terminate her amounted to disability discrimination and unlawful retaliation, and by identifying the date of that adverse employment action in that document, Bernal brought FEHA claims predicated on her termination to DFEH's attention. (See *Wills, supra,* 195 Cal.App.4th at p. 156.) In addition, had DFEH investigated Bernal's administrative complaint, it likely would have uncovered the multiple competency validations that Stanovich and Garcia required her

16

to undertake, given that Bernal offered evidence that Stanovich and Garcia terminated her in part because she failed to pass these validations.  (See Discussion, part B, *post*.)  Thus, Bernal exhausted her FEHA claims arising out of her competency validations and the resulting termination.  (See *Wills*, at p. 156.)

The same is not true for Bernal's complaints of other unlawful conduct.  These allegations include wrongful acts allegedly perpetrated by Flynn and Taad before Bernal returned to LAMC from West L.A., such as:  "Flynn passing . . . Bernal over for a promotion after . . . Bernal took a medical leave of absence for her carpal tunnel[;] . . . Taad disregarding . . . Bernal's need for and entitlement to accommodation for her carpal tunnel[,] . . . and then bad-mouthing . . . Bernal to her co-workers and subordinates; . . . Taad attributing . . . Bernal with negative attendance on her performance evaluation; and . . . Flynn attempting to have . . . Bernal resign rather than transfer to West L.A. and subsequently attempting to thwart . . . Bernal's return to LAMC by lying about the job vacancy."  They also include purported misconduct by Stanovich and Garcia unrelated to the competency validations and Bernal's termination, e.g., "improperly contacting [Bernal in June 2016] to return to work despite her approved leave of absence; violating seniority by changing her work schedule to undesirable hours; improperly placing her on probation immediately upon her return [to LAMC]; [and] miscalculating her pay by placing her on a wrong salary step . . . ."

Bernal makes no effort to show that an administrative investigation into her DFEH complaint would have revealed any claims other than those concerning the competency validations and her ensuing termination.  Instead, she claims her "DFEH

17

complaint was sufficient to trigger the continuing violations doctrine" because it "refers to her employment people with a broad brush without a time limitation *and* asserts the continuing violations doctrine." We fail to see how Bernal's invocation of the continuing violations doctrine in her administrative complaint establishes that DFEH should have discovered her other complaints that are not identified in that document. Permitting her vague and conclusory administrative complaint to exhaust *every* allegation of misconduct occurring during her tenure at Kaiser would render impracticable "[t]he purpose of FEHA's administrative exhaustion requirement," that is, "to ensure DFEH is provided the opportunity to resolve disputes and eliminate unlawful employment practices through conciliation." (See *Wills*, *supra*, 195 Cal.App.4th at p. 156.)

Accordingly, we address the merits of only those FEHA claims arising out of the competency validations and Bernal's termination thereafter.

## B. Bernal's Discrimination and Retaliation Causes of Action Fail Because She Does Not Establish a Triable Issue Regarding Whether Kaiser Terminated Her with Discriminatory or Retaliatory Animus

In its summary judgment motion, Kaiser argued that, regardless of whether Bernal could establish a prima facie case of discrimination and retaliation under FEHA, each claim failed because Kaiser had a legitimate reason for terminating her—i.e., "it suspected Bernal was lying about her medical leave in order to avoid the consequences of her failed validations, and Bernal refused to participate in any inquiry into the matter." Kaiser reasserts this argument on appeal. In resolving this issue, we assess whether: (a) Kaiser presented evidence it discharged

18

Bernal for a legitimate, nondiscriminatory/nonretaliatory reason and, if so, (b) Bernal established a triable issue of fact on whether Kaiser's decision to terminate her was the product of discriminatory or retaliatory animus. (See *Foroudi*, *supra*, 57 Cal.App.5th at p. 1007 [discussing this burden-shifting framework in the context of discrimination claims]; *Jumaane*, *supra*, 241 Cal.App.4th at p. 1408 [same as to retaliation claims].)

In the course of analyzing whether Bernal could show she was actually disabled, the trial court remarked: "The facts surrounding [Bernal's] . . . termination[ ] establish that Bernal was not terminated *because of* her being on leave or having a stress-related disability. It was undisputed that Bernal performed similar work elsewhere without authorization while she was on leave, constituting fraud and a violation of Kaiser policy. Had Bernal not done that, her medical leave would have continued undisturbed. While Bernal attempts to raise a triable issue of pretext by claiming Kaiser's other nurses [were] doing the same thing or even a nationwide nurse shortage, she fails to show that other Kaiser nurses on disability or medical leave actually performed unauthorized work elsewhere without being terminated so as to raise a triable issue."

On appeal, Bernal does not contest the trial court's conclusions that (1) she performed unauthorized work elsewhere when she was on medical leave; and (2) she has not shown that other Kaiser nurses also performed unauthorized work but were not terminated. These unchallenged conclusions indicate that Kaiser's decision to terminate Bernal was not motivated by discriminatory or retaliatory animus.[8]

---

[8] Although the trial court stated in the summary judgment ruling that it did not reach whether Kaiser terminated Bernal for

Instead of challenging the trial court's conclusions, Bernal suggests there exists a triable issue regarding whether "Kaiser's proffered (fraud) reason was not its *actual* reason for terminating her," meaning it was "a pretext for its actual, discriminatory motive." Specifically, Bernal claims the trial court "overlooked [her] evidence" that Stanovich and Garcia decided to terminate her based on the results of the competency validations. In support of this contention, Bernal points out that "Stanovich testified that . . . Bernal was *also* terminated for her failure to re-validate," and that Garcia had initially decided on November 18, 2016 to terminate Bernal for " 'failure to meet employment requirement' " but later canceled her termination when Bernal was placed on medical leave.

As discussed below, we conclude Bernal has not established a triable issue regarding whether the termination, and the results of the competency validations upon which it was predicated, were " 'the product of discriminatory or retaliatory animus.' " (See *Joaquin*, *supra*, 202 Cal.App.4th at p. 1226, fn. 5 [holding that this question is " '[t]he central issue' " in a

---

"a legitimate business reason" because Bernal had failed to establish a prima facie case of discrimination under FEHA, the court's unchallenged conclusions regarding Kaiser's stated ground for ending Bernal's employment are relevant to our analysis of whether Kaiser had a legitimate, nondiscriminatory/nonretaliatory reason for doing so. (See *Joaquin*, *supra*, 202 Cal.App.4th at p. 1226, fn. 5 ["The employer's . . . articulation of a legitimate reason . . . can . . . dispel the *presumption* of improper motive."]; see also *Estate of Sapp*, *supra*, 36 Cal.App.5th at p. 104 [noting that on appeal, a trial court's order is presumed to be correct and all intendments and presumptions are construed in favor of the order].)

retaliation or discrimination case].) Accordingly, the trial court did not err in entering judgment in Kaiser's favor on Bernal's discrimination and retaliation claims.

      1.    *Flynn's and Taad's alleged unlawful animus does not taint the results of Bernal's competency validations or her subsequent termination*

Bernal claims that she "offered a litany of evidence supporting the reasonable inference" that the Kaiser personnel who supervised her at LAMC before she transferred to West L.A. in January 2016, Flynn and Taad, "harbored discriminatory animus toward . . . Bernal based on her actual or perceived disability (i.e., carpal tunnel, associated medical surgery and leaves of absence[ ], and modified work requirements as a result thereof)."[9] Bernal further contends that Flynn and Taad " 'poisoned the well' to . . . Garcia and . . . Stanovich by communicating to . . . Garcia . . . and . . . Stanovich the incidents that ultimately formed the basis for the latter supervisors' 'concerns' about . . . Bernal's competency." Specifically, Bernal presented evidence that "on May 9, 2016, . . . Flynn informed . . . Garcia and . . . Stanovich about . . . Bernal's experience while at West L.A." Moreover, Bernal presented evidence that on or about

---

    **9** Bernal does not contend she still had carpal tunnel syndrome when she returned to LAMC in June 2016, or that Stanovich and Garcia regarded or treated her as having that condition. Instead, Bernal maintains (1) she "suffered from carpal tunnel syndrome, necessitating two surgeries and accommodations, including modified duty, in 2014 and 2015"; and (2) she "alleged not only an actual physical disability *during this timeframe*, but also that . . . Taad and . . . Flynn perceived her to be disabled." (Italics added.)

21

August 2, 2016, "Garcia told [her] that . . . Taad [and Flynn] had informed him of an incident that occurred a few years prior [(i.e., in which Bernal was wrongfully accused of accessing a fistula)] that formed the basis (along with the West L.A. incident) to question her competency, and to justify the second re-validation."

At most, Bernal has shown a triable issue of material fact regarding whether Flynn's and Taad's animus toward her influenced Stanovich's and Garcia's decision to require Bernal to undergo a series of validations to assess her competency as a PICC nurse. Although Bernal argues that "forcing her to be validated and re-validated *by inferior colleagues* with *improper and unfair procedures*" and her subsequent termination constitute adverse employment actions, she does not direct us to any evidence demonstrating the decisions to assess and reassess her competency—in and of themselves—constitute adverse employment actions. (Italics added.) Nor is it apparent that simply subjecting an employee to multiple performance evaluations constitutes an action that satisfies the standard for an adverse employment action—i.e., an act that is " 'reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement.' [Citation.]" (See *Department of Corrections & Rehabilitation*, *supra*, 43 Cal.App.5th at p. 734.) Instead, this appears to be " '[m]inor or relatively trivial adverse action[ ] or conduct by [an] employer . . . that, from an objective perspective, [is] reasonably likely to do no more than anger or upset an employee . . . .' [Citation.]" (See *ibid.*)

This distinction between (a) the decision to subject Bernal to competency validations on the one hand, and (b) the adoption of supposedly improper and unfair procedures for those

22

competency validations and (c) terminating Bernal based on her failure to pass those validations on the other, is critical to this case. Even if Flynn's and Taad's alleged discriminatory or retaliatory animus caused Stanovich and Garcia to undertake decision (a), that fact alone would not give rise to liability under FEHA.[10] Flynn's and Taad's animus would be legally relevant only if they "materially contributed" to decisions (b) and (c), meaning that Stanovich and Garcia did not "break[ ] the chain of causation by taking . . . truly independent action[s]." (See *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 110, 114–115 & fn. 14, 116.)

Bernal does not identify evidence that Flynn and Taad played any role in conducting, or determining the parameters of, the competency validations, or in later terminating her. Rather, Bernal admits Stanovich told Bernal upon her return to LAMC that Bernal had to be " 'validated' with 10 adults and 3 pediatric patients," Stanovich "rejected [the initial] validation" and "decid[ed] to change the validation structure for" Bernal thereafter, and Stanovich and Garcia later terminated Bernal in part because of "her failure to re-validate." Bernal also admits that after Stanovich "reject[ed] . . . Bernal's successful validation, . . . Stanovich *unilaterally* created a new validation tool that subjected . . . Bernal to additional validation." (Italics added.) Accordingly, we reject Bernal's argument that "a jury

_____

**10** (See *Department of Corrections & Rehabilitation, supra*, 43 Cal.App.5th at p. 734 ["[A]n adverse employment action . . . is an essential element of [discrimination and retaliation] claims."]; *Joaquin, supra*, 202 Cal.App.4th at p. 1226, fn. 5 [indicating that the adverse employment action must be "the product of discriminatory or retaliatory animus" to give rise to liability].)

23

could find . . . Flynn['s] and . . . Taad's discriminatory intent relevant to the adverse actions" that are properly before us—i.e., allegedly setting Bernal up to fail the competency validations and terminating her as a result.[11] (See *Artal*, *supra*, 111 Cal.App.4th at p. 274, fn. 2 [noting that we may construe a statement in a brief as an admission against the party making it].)

2. *Bernal's assertions that she (a) was actually disabled and (b) reasonably believed she was actually disabled do not salvage her discrimination and retaliation claims*

In its ruling on the summary judgment motion, the trial court concluded "there is no triable issue of material fact regarding whether [Bernal] had a qualified 'disability' under FEHA—she did not." In arriving at this conclusion, the court relied on the Third District's decision in *Higgins-Williams v. Sutter Medical Foundation* (2015) 237 Cal.App.4th 78, which held that "an employee's inability to work under a particular supervisor because of anxiety and stress related to the supervisor's standard oversight of the employee's job performance

---

[11] Insofar as Bernal claims the unfavorable results of the competency validations, and the investigatory suspensions resulting therefrom, constitute adverse employment actions, her retaliation and discrimination causes of action would still fail. For the reasons provided in Discussion, part B, Bernal has failed to establish that the validation results were tainted by discriminatory or retaliatory animus, which is a prima facie element of both claims. (See *Foroudi*, *supra*, 57 Cal.App.5th at p. 1007 [FEHA discrimination claims]; *Jumaane*, *supra*, 241 Cal.App.4th at p. 1408 [FEHA retaliation claims].)

does not constitute a mental disability under FEHA." (*Higgins-Williams*, at pp. 80, 85, italics omitted.)

In her opening brief, Bernal acknowledges the trial court's ruling on this issue but does not contest it. Rather, she claims the trial court erred in "neglect[ing] to analyze whether a trier of fact could find that Kaiser *perceived or regarded* [her] as having a disability."[12]

In response, Kaiser states that "Bernal has now abandoned the position that she was *actually* disabled within the meaning [of] FEHA" by "offer[ing] no argument on the issue . . . ." Kaiser further argues that "[t]he trial court's ruling in this regard [is] sound."

In her reply brief, Bernal argues for the first time that *Higgins-Williams*'s holding is inapplicable because a reasonable jury could find that "Stanovich's actions were outside of the normal supervisory oversight." In support of this argument, she cites 10 "factors" and supplies numerous record citations. She then argues in a footnote that *if* we conclude she waived her claim that she was actually disabled, we should allow her to "file a supplemental brief" addressing that issue. Bernal further suggests that Kaiser was not prejudiced by her discussion of this issue in her reply because "Kaiser [had] already briefed [it.]" Yet, she does not claim that Kaiser should have somehow anticipated that she would rely upon the aforementioned 10 factors or the record evidence allegedly supporting them.

Bernal may not avoid *Higgins-Williams*'s holding by asserting a new theory in her appellate reply brief, to wit, that

---

[12] That argument concerning the disabilities that Stanovich and Garcia supposedly perceived or regarded Bernal as having fails for the reasons provided in Discussion, part B.3, *post*.

Stanovich's actions were beyond normal supervision, because "[a]rguments presented for the first time in an appellant's reply brief are considered waived." (*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 (*Habitat & Watershed Caretakers*).) Insofar as Bernal requests leave to file a supplemental brief, we reject that request as procedurally improper because she should have submitted it in an application or motion. (See Cal. Rules of Court, rule 8.50 [governing applications]; *id.*, rule 8.54 [governing motions].) A reply brief is not the proper occasion to seek that relief, especially considering the fact that Kaiser has had no opportunity to respond to the request in writing. (See *id.*, rule 8.200(a)(4) ["[Aside from appellant's opening brief, respondent's brief, and appellant's reply brief, n]o other brief may be filed except with the permission of the presiding justice."].)

Although Bernal may not obtain reversal of the trial court's judgment based on her supervisors' alleged animus toward her purported actual disability, we acknowledge that for the purposes of her retaliation claim, protected activities include "oppos[ing] conduct that the employee reasonably and in good faith believes to be discriminatory, *whether or not the challenged conduct is ultimately found to violate the FEHA*.' [Citation.]" (See *Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 381 (*Dinslage*), italics added.) Under this standard, " 'a mistake of either fact or law may establish an employee's good faith but mistaken belief that he or she is opposing conduct prohibited by FEHA.' [Citation.] In such cases, the question is the

26

reasonableness of the employee's belief that he was opposing a practice prohibited by the FEHA."[13]  (*Dinslage*, at p. 381.)

Although Bernal claims she submitted multiple complaints to Kaiser protesting Stanovich's and Garcia's alleged "discriminatory, harassing, and retaliatory behavior," she offers no argument concerning the supposed reasonableness of her erroneous belief that the stress caused by her supervisors' standard oversight of her job performance constituted a disability under FEHA.  Nor is it apparent that her mistake of law concerning that issue was reasonable, given that the Third District issued the *Higgins-Williams* decision more than a year before Stanovich and Garcia became her supervisors on June 27, 2016.  (See *Higgins-Williams*, *supra*, 237 Cal.App.4th at p. 78 [issued on May 26, 2015]; see also *Dinslage*, *supra*, 5 Cal.App.5th at p. 382 ["The objective reasonableness of an employee's belief that his employer has engaged in a prohibited employment practice 'must be measured against existing substantive law.' "].)

For the foregoing reasons, Bernal cannot establish a triable issue regarding whether Kaiser subjected her to an adverse employment action because of (a) an actual disability or (b) her

---

[13] Although FEHA also bars an employer from "retaliat[ing] or otherwise discriminat[ing] against a person for requesting accommodation," that prohibition is triggered only if the employee has a "known physical or mental disability . . . ." (See § 12940, subds. (m)(1)–(m)(2).)  For the reasons discussed in this section and in Discussion, part B.3, *post*, we conclude that Bernal has failed to raise a triable issue on that point.

opposition to conduct that she reasonably believed violated FEHA.[14]

###### 3. *Bernal's claim that Stanovich and Garcia perceived her to be disabled does not create a triable issue regarding whether they possessed unlawful animus*

FEHA provides that the term " '[m]ental disability' " includes "[b]eing regarded or treated by the employer . . . as having, or having had, any mental condition that makes achievement of a major life activity difficult" and "[b]eing regarded or treated by the employer . . . as having, or having had, a mental or psychological disorder or condition that has no present disabling effect, but that may become a mental disability" that "limits a major life activity" or "requires special education or related services." (See § 12926, subds. (j)(1)–(j)(2), (j)(4)–(j)(5).) Similarly, the statute provides that " '[p]hysical disability' " includes "[b]eing regarded or treated by the employer . . . as having, or having had, any physical condition that makes achievement of a major life activity difficult" and "[b]eing regarded or treated by the employer . . . as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment that has no present disabling effect but may become a physical disability" that "[a]ffects [a] . . . body

---

[14] Bernal does not argue that her FEHA retaliation cause of action is premised on a reasonable (but mistaken) belief that Stanovich and Garcia discriminated or retaliated against her in connection with a disability that they erroneously believed she possessed. (See also Discussion, part B.3, *post* [discussing in greater detail Bernal's claim that Stanovich and Garcia perceived her to be disabled].)

28

system" and "[l]imits a major life activity" or "requires special education or related services." (See § 12926, subds. (m)(1)–(m)(2), (m)(4)–(m)(5).)

Bernal argues that because "a trier of fact could find that Kaiser *perceived or regarded* . . . Bernal as having a disability," she has viable FEHA claims for discrimination and retaliation. This argument fails because Bernal's evidence falls short of establishing a triable issue concerning whether Stanovich or Garcia took adverse employment actions against her because (a) they regarded or treated her as disabled or (b) she engaged in protected activity connected to any disability that Stanovich or Garcia believed she had.[15]

" 'While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice" ' " of a disability under FEHA. (See *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1248 (*Avila*).) Indeed, " '[n]ot every illness qualifies as [a] disability,' " and an "employer's knowledge that [an] employee 'had taken a substantial amount of leave for medical appointments' " can fall short of demonstrating the employer's

---

[15] Bernal suggests for the first time in her reply that Kaiser failed to discharge its "initial burden below to demonstrate" Bernal could not establish a triable issue that "she was perceived as disabled by . . . Stanovich and . . . Garcia." She waives any such argument by failing to raise it timely. (*Habitat & Watershed Caretakers, supra,* 213 Cal.App.4th at p. 1292, fn. 6.)

29

awareness of a disability. (See *id.* at p. 1249.) Applying these principles to the case before it, the *Avila* court concluded that a form from a health care provider indicating an employee had been hospitalized for several days for an unspecified condition "was not sufficient to put [the employer] on notice that [the employee] was suffering from a qualifying disability." (See *id.* at pp. 1247–1250.)[16]

Bernal maintains a reasonable jury could find that Garcia perceived Bernal "as suffering from some sort of disability" because he knew she was absent from work on medical leave at certain points in time. Specifically, Bernal claims that although Garcia initially believed that the medical leave of absence Bernal took immediately prior to her return to LAMC was not " 'official' [since] he required . . . Bernal to report to work on June 1, 2016 (in the midst of her medical leave)[,] . . . . the Department of Human Resources sent . . . Bernal back home and she did not return to work until her leave was completed." Bernal further contends "Garcia was aware that from August 10, 2016 through September 21, 2016, . . . Bernal took a protected leave of absence that indicated she was 'on stress leave w/ psych.' "

Additionally, Bernal asserts that "[a] jury could also reasonably conclude that . . . Garcia and/or . . . Stanovich considered . . . Bernal's 'fuzzy' demeanor and alleged 'slurred

---

[16] Although *Avila* addressed whether an employer had knowledge of an *actual* disability (see *Avila*, *supra*, 165 Cal.App.4th at p. 1243), we find that decision instructive because "whether an employer perceives a plaintiff as disabled and whether an employer is aware of a plaintiff's disability are similar" questions. (See *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 938–939.)

speech' during their June 2016 meeting to be the result of a physical disability, which also influenced their decision to subject . . . Bernal to a premature re-validation."

We find unavailing Bernal's reliance on Garcia's knowledge that she took medical leave. Given the dearth of information Bernal claims was available to Garcia regarding her medical leave, Garcia simply could have concluded that Bernal abstained from working to cope with stress. Bernal does not point to any evidence Garcia believed that the stress Bernal endured was so severe that it was indicative of a mental condition or disorder. (See § 12926, subds. (j)(1)–(j)(2), (j)(4)–(j)(5).) Because not every ailment causing an employee to miss work constitutes a disability under FEHA (see *Avila, supra,* 165 Cal.App.4th at pp. 1248–1250), Garcia's awareness of Bernal's stress-induced medical leave does not give rise to a triable issue regarding whether he perceived her to be disabled.[17]

Stanovich's and Garcia's belief that Bernal had a " 'fuzzy' demeanor" and " 'slurred speech' " at the June 27, 2016 meeting does not give rise to a reasonable inference that they regarded or treated her as having a physical disability. This behavior could be attributed to any number of causes that do not constitute a physical condition, disease, disorder, or health impairment that has the potential to limit a major life activity or require special education or related services. (See § 12926, subds. (m)(1)–(m)(2),

_____

[17] Bernal also intimates for the first time in her reply that Stanovich believed Bernal was disabled because Stanovich told a nurse assigned to conduct one of Bernal's validations that Bernal had "recently completed a lengthy medical leave." Bernal has waived this argument. (*Habitat & Watershed Caretakers, supra,* 213 Cal.App.4th at p. 1292, fn. 6.)

(m)(4)–(m)(5).)  For instance, Stanovich stated in her deposition that she suspected Bernal was "under the influence of something . . . ."  Further, Garcia testified Bernal told him that her speech was slurred because she had undergone some sort of surgery.

Thus, Bernal identified evidence establishing nothing more than that Stanovich and Garcia thought she may have suffered from one or more " 'unspecified' " impairments.  (See *Avila, supra,* 165 Cal.App.4th at p. 1248.)  Because a jury would have to resort to " 'speculation and conjecture' " to find that Stanovich or Garcia in fact regarded or treated Bernal as having a mental or physical disability, she has failed to establish a triable issue on that point.  (See *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 143 [" '[S]peculative inferences do not raise a triable issue of fact[.]' "].)

Bernal further claims that Stanovich stated in her deposition that " '[she] was told [Bernal] had some type of physical illness or something that was precluding her from being able to work.' "  Bernal further asserts that Stanovich "acknowledged that her 'understanding' was that . . . Bernal's leave of absence 'was based on physical disability.' "  The excerpts of the deposition transcript Bernal cites for these propositions show Stanovich testified that, in connection with the last medical leave Bernal took during her tenure at Kaiser (i.e., leave she took beginning on November 19, 2016), a Kaiser employee conveyed the aforesaid information to Stanovich regarding the nature of Bernal's leave.

We find Bernal's reliance on this aspect of Stanovich's deposition transcript perplexing.  As far as we can discern, Bernal's theory of the case is that Stanovich and Garcia had

32

decided to terminate Bernal's employment because she failed the second and third competency validations. Because Bernal failed these validations before she took medical leave on November 19, 2016, Stanovich's later-acquired belief that Bernal had a physical disability has no apparent relevance to her discrimination and retaliation claims. (See *Avila, supra*, 165 Cal.App.4th at p. 1251 ["Evidence that a decision maker learned of a[n employee's] disability *after* deciding to take adverse employment action is not probative of whether the decision maker was aware of the [employee's] disability when he or she made the decision. Such evidence is irrelevant to determining whether the decision maker acted from a discriminatory animus."]; *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 354 [" 'Employers are sometimes forced to remove employees who are performing poorly . . . . Precedent does not prevent [an employer] from removing such an employee simply because the employee [recently] engaged in a protected work activity.' "].)

Furthermore, Stanovich attested in her declaration that shortly before she terminated Bernal, she "doubt[ed] the legitimacy of . . . Bernal's medical leave" from Kaiser because Stanovich "learned that . . . Bernal continued to work for a PICC registry service while she was on medical leave." As we noted at the beginning of Discussion, part B, Bernal does not challenge the trial court's conclusion that she did in fact perform unauthorized work for a different employer while she was on leave. Under these circumstances, no rational trier of fact could have concluded that when Stanovich terminated Bernal on February 17, 2017, Stanovich actually believed Bernal suffered

33

from a "physical disability" "that was precluding her from being able to work."

Given these facts, we are unable to ascertain how Stanovich's belatedly formed belief that Bernal was physically disabled is relevant to whether Stanovich or Garcia subjected her to an adverse employment action with discriminatory or retaliatory animus. Bernal's failure to elaborate further on that point is fatal to her reliance on Stanovich's deposition testimony. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [" '[T]o demonstrate error, an appellant must supply the reviewing court with some *cogent* argument supported by legal analysis and citation to the record.' [Citation.] 'We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise[,]' " italics added].)

In sum, Bernal has failed to discharge her burden of affirmatively showing the trial court committed reversible error in disposing of her FEHA discrimination and retaliation claims. (*Los Angeles Unified School Dist.*, *supra*, 57 Cal.App.5th at p. 492; *Estate of Sapp*, *supra*, 36 Cal.App.5th at p. 104.)

## C. Bernal Fails to Demonstrate Error as to Her Causes of Action for Failure to Provide Reasonable Accommodation and Failure to Participate in the Interactive Process

Section 12940, subdivision (m)(1) prohibits an employer from "fail[ing] to make reasonable accommodation for the known physical or mental disability of an . . . employee." (§ 12940, subd. (m)(1).) Similarly, subdivision (n) obligates an employer to "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations,

34

if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition." (*Id.*, subd. (n).)

During the proceedings below, Kaiser argued Bernal's FEHA causes of action for failure to provide reasonable accommodation and participate in the interactive process failed because, among other things, Bernal did not suffer a qualifying disability under FEHA and she was not denied reasonable accommodation. Kaiser reasserts this position in its appellate brief.

Regarding her failure to accommodate claim, Bernal argues she "requested a limited accommodation in the form of a leave of absence through April 14, 2017, arising from her depression/stress as a result of her supervisor's retaliatory, harassing, and discriminatory conduct." She avers that "Kaiser failed to accommodate her by interrupting her leave to attempt to discipline her, and ultimately by requiring her to respond to . . . Stanovich's February 10, 2017 letter or else face termination." She further contends that "Kaiser did not attempt to present any evidence that waiting until . . . Bernal's unpaid medical leave ended to contact her and issue discipline would have caused it undue hardship."

It thus appears that Bernal's failure to accommodate claim is premised on her contention that Stanovich's and Garcia's behavior caused her to suffer a stress-related disability. Because Bernal waived that argument (see Discussion, part B.2, *ante*), she cannot establish an essential element of this cause of action.[18]

---

[18] (See *Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192 ["The essential elements of a failure to accommodate

35

Stanovich's belief that Bernal took her final stretch of medical leave because of some sort of unspecified physical disability does not rescue this cause of action either.[19] (See Discussion, part B.3, *ante*.) This is because Bernal does not argue—let alone identify evidence showing—that Stanovich should have been aware she needed to accommodate this perceived unspecified physical disability by refraining from contacting Bernal during her leave.[20]

With respect to her interactive process cause of action, Bernal complains "LAMC created an unprecedented multi-validation procedure to question and undermine . . . Bernal's competency and jeopardize her career prospects." She claims Kaiser did not "interact [with her] in good faith" because it "did not attempt to accommodate her" by explaining "why she

---

claim are[, inter alia,] the plaintiff has a disability covered by the FEHA."].)

[19] Bernal argues for the first time in her reply there is a triable issue regarding whether Stanovich believed Bernal was "*mentally* disabled" at that time. (Italics added.) Bernal waived this contention. (*Habitat & Watershed Caretakers*, *supra*, 213 Cal.App.4th at p. 1292, fn. 6.) In any event, the excerpts from Stanovich's deposition that Bernal cites in support of this argument do not indicate that Stanovich believed Bernal had a *mental* disability, but instead suggest Stanovich was informed that Bernal possessed a *physical* disability.

[20] (See *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 443 ["An employee cannot demand clairvoyance of his employer. [Citation.] ' "[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it." ' "].)

was being treated as she was" or "hav[ing] the BARD company re-validate her . . . ."

It is not altogether clear that Bernal's discussions with Stanovich and Garcia concerning the competency validations constitute "request[s] for reasonable accommodation" triggering a duty to "engage in a timely, good faith, interactive process with" Bernal for the purposes of FEHA. (See § 12940, subd. (n); see also *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 600 [holding that as a general rule, "the employee must initiate the [interactive] process" by requesting a reasonable accommodation].) In any case, no reasonable jury could conclude that, at the time Stanovich and Garcia required Bernal to undergo the competency validations, she had an actual disability or they regarded or treated her as having a disability. (See Discussion, parts B.2–B.3, *ante*; *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 61 & fn. 21 [noting that FEHA "obligate[s an employer]" to engage in a timely, good faith discussion with an . . . employee *whom it knows is disabled*," and that this obligation encompasses an employee whom the employer mistakenly believes is disabled, fn. omitted, italics added].)

We thus conclude that Bernal's FEHA causes of action for failure to accommodate and failure to participate in the interactive process fail as a matter of law.

## D.    Bernal Abandoned Her CFRA Causes of Action

In her opening brief, Bernal acknowledges that she "pursued claims under the California Family Rights Act" during the proceedings below, but states that she "does not pursue [them] on appeal." Consequently, she has abandoned her CFRA causes of action. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466,

37

fn. 6 ["Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in [an appellant's] brief.  [Citations.]  Issues not raised in an appellant's brief are deemed waived or abandoned."].)

## E.    Bernal's FEHA Failure to Prevent Cause of Action and Her Wrongful Termination in Violation of Public Policy Claim Fail Because They Are Predicated on Her Other Causes of Action

FEHA forbids employers from "fail[ing] to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  (§ 12940, subd. (k).)  Additionally, " '[i]t is settled that an employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision gives rise to a tort action.' [Citation.]"  (*Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1377.)

Bernal argues that her FEHA failure to prevent claim should be reinstated because her discrimination and retaliation claims ought to have survived summary judgment.  Because we reject Bernal's contention that her discrimination and retaliation claims are viable (see Discussion part B, *ante*), we do not disturb the trial court's ruling on her failure to prevent cause of action.

Furthermore, the trial court granted Kaiser's motion as to the wrongful termination claim on the ground that because Bernal's other causes of action failed, Bernal could not establish "any constitutional, statutory, or other public policy violations" giving rise to tort liability.  On appeal, Bernal concedes this cause of action is "derivative" of her other claims.  It follows that

38

because Bernal has not demonstrated error as to her FEHA or CFRA claims, her wrongful termination claim also fails.[21]

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.

We concur:


ROTHSCHILD, P. J.


KELLEY, J.*

---

[21] We have rejected the merits of Bernal's FEHA claims arising out of her termination.  Thus, Bernal's wrongful termination claim would fail even if we agreed with her contention that she did not have to exhaust administrative remedies as to that cause of action.

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.